**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN VERA SALAZAR, III,

Defendant - Appellant.

No. 02-6402
(D. Ct. No. 02-CR-60-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **McKAY** and **McCONNELL**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A federal grand jury indicted John Vera Salazar, III, on three counts relating to the manufacture and distribution of methamphetamine. Mr. Salazar

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pleaded guilty to all charges. Based on information included in the Presentence Investigation Report, the district court, over Mr. Salazar's objection, enhanced Mr. Salazar's base offense level by six levels, finding that his methamphetamine-related actions created a substantial risk of harm to the life of his ten-year-old nephew. Following this ruling, the district court sentenced Mr. Salazar to three 210-month sentences, to run concurrently. He filed timely notice of appeal. We take jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2) and AFFIRM.[1]

## I. Background

This appeal represents the culmination of an extended investigation into the Salazar family's methamphetamine-related activities. On at least four occasions, agents from the Bureau of Indian Affairs ("BIA") searched the Salazar's rural compound, each time finding extensive evidence of methamphetamine production. During these searches, BIA officers discovered numerous dangerous items strewn about, such as methamphetamine; hazardous chemicals, including anhydrous

---

[1] Under 10th Cir. R. App. P. 10.1, the appellant must submit copies of "all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." 10th Cir. R. App. P. 10.1(A)(1). The appellee may supplement that submission with other portions of the record if he "considers it necessary." Fed. R. App. P. 10(b)(3)(B). We note that both parties cited to the transcript in their briefs and, yet, neither supplied a copy of those portions of the transcript on appeal. We trust that Mr. White and Assistant United States Attorney Sengel will follow this requirement more closely in their future submissions to this court.

ammonia and acid; and flammable and explosive substances, [2] including lithium. During one search, agents discovered methamphetamine in a bedroom filled with children's toys, videos, and stuffed animals.

Furthermore, the record reveals troubling facts regarding Mr. Salazar's nephew, who lived at various residences in the compound around the time of Mr. Salazar's arrest. The nephew stated that he did not like living at the compound because the fumes made his nose itch. He further stated that he preferred living in one of the residences at the compound because it had a door that he could shut to keep the fumes out, unlike when he lived at the other residence where his room lacked a door and the fumes made him dizzy. Indeed, Mr. Salazar admitted in a brief to the district court that his nephew "was exposed to noxious fumes intermittently." Unsurprisingly then, the Presentence Investigation Report includes troubling observations regarding the nephew's mental and physical health.

On appeal, Mr. Salazar first argues that the district court erred by enhancing his sentence under U.S.S.G. § 2D1.1(b)(5)(C), which provides for a six-level enhancement for methamphetamine production that creates "a substantial risk of harm to the life of a minor or incompetent." U.S.S.G § 2D1.1(b)(5)(C).

---

[2] Agents conducted at least one of the searches in response to a report of an explosion at the Salazar compound.

Mr. Salazar argues that there is insufficient evidence regarding when his nephew lived at the compound and whether, during that time, he was ever directly exposed to any of the dangerous chemicals at the compound. He further urges that "Department of Human Services reports contradict the finding that the minor child's life was in substantial risk of harm."

In the alternative, Mr. Salazar argues that the district court cannot enhance his base offense level under § 2D1.1(b)(5)(C) because the court cannot add "additional points on a defendant for acts which have already been accounted for." To this end, he argues that it would be "double-counting" to enhance his base offense level under § 2D1.1(b)(5)(C) because all manufacturing of methamphetamine is inherently dangerous. We address these arguments seriatim.

## II. Discussion

### A. Sentence Enhancement Under U.S.S.G. § 2D1.1(b)(5)(C)

Mr. Salazar first argues that the district court erred in enhancing his base offense level under § 2D1.1(b)(5)(C) because there is insufficient evidence supporting the enhancement. "We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Dillon*, 351 F.3d 1315, 1318 (10th Cir. 2003).

Section 2D1.1(b)(5)(C) requires a district court to enhance a defendant's sentence if his offense (1) "involved the manufacture of . . . methamphetamine"

- 4 -

and (2) "created a substantial risk of harm to the life of a minor." U.S.S.G. § 2D1.1(b)(5)(C). Under prong 2, therefore, a district court must first make findings as to the presence of a minor or minors. *United States v. Florence*, 333 F.3d 1290, 1293 (11th Cir. 2003). Here, the district court unquestionably satisfied this requirement by finding that Mr. Salazar's nephew lived at the compound during much of the time that Mr. Salazar engaged in methamphetamine-related activities; and we find that record evidence supports the district court's conclusion.

Next, the district court must find that the drug activities created a "substantial" risk to the life or lives of the identified minor or minors. U.S.S.G. § 2D1.1(b)(5)(C)(ii). Application Note 20 to § 2D1.1 provides the following factors that a court must consider when determining this requirement:

> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (ii) The manner in which the hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (iii) The duration of the offense, and the extent of the manufacturing operation.
>
> (iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk.

U.S.S.G § 2D1.1, Application Note 20(A).

In a thorough and well-reasoned order, the district court considered these factors, ultimately concluding that "[t]he government has clearly met its burden in this case." After reviewing the record on appeal and the district court's order, we find that the district court's finding of facts were not clearly erroneous and that the district court properly applied § 2D1.1(b)(5)(C). As such, we affirm the district court's enhancement.

## B.    "Double-Counting"

Mr. Salazar next argues that the district court cannot enhance his base offense level under § 2D1.1(b)(5)(C) because the guidelines have already taken into account the "dangerousness" of manufacturing methamphetamine, thereby making an enhancement under § 2D1.1(b)(5)(C) amount to impermissible "double-counting."

When considering challenges of double-counting, we have generally concluded that

> [i]f . . . it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior. *United States v. Duran*, 127 F.3d 911, 917 (10th Cir. 1997).

Here, it is undoubtedly possible to be sentenced under § 2D1.1 for manufacturing, importing, exporting, or trafficking drugs, without "creat[ing] a

- 6 -

substantial risk of harm to the life of a minor." U.S.S.G. § 2D1.1(b)(5)(C). As such, we find that it was not impermissible double-counting to enhance Mr. Salazar's sentence under that provision.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge